UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | Case No: CR 11-00188 SBA |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS IN LIMINE** |
| vs. | |
| DAVID BUSBY, | Dkt. 40 |
| Defendant. | |

Defendant David Busby is charged in a one-count Indictment with a violation of 18 U.S.C. § 2252(a)(4)(B)—Possession of Child Pornography. The parties are presently before the Court on Defendant's five Motions in Limine. Dkt. 88. Having read and considered the papers filed in connection with this matter and being fully informed, the Court GRANTS IN PART and DENIES IN PART motion in limine nos. 1 and 2, GRANTS motion in limine nos. 3 and 4, and DENIES motion in limine no. 5.

## I.   BACKGROUND

### A.   DEFENDANT'S PERSONAL HISTORY

Defendant is a 59 year-old male who is accused of possessing child pornography on his workplace computers while employed by the Lawrence Berkeley National Laboratory ("LBL"). At the time Defendant is accused of downloading child pornography in this case, he worked for LBL's Information Technology Division at its Scientific Facility located in Oakland, California. LBL is operated by the University of California, Berkeley ("UCB").

Defendant has a prior criminal record based on a July 1990 conviction following his entry of a guilty plea to committing a lewd act on a child under the age of 14, in violation of California Penal Code § 288(a). The child victim was the Defendant's seven year-old stepdaughter. Defendant suffered the conviction in the Solano County Superior Court, which sentenced him to probation and ordered him to serve 90 days in county jail on weekends.

As a result of his molestation conviction, Defendant is subject to the Sex Offender Registration Act, Cal. Pen. Code §§ 290-290.024. Under those provisions, Defendant is required to register with the chief of police of the city in which he resides, as well as the chief of police of the campus of the University of California if he resides on the campus or in any of its facilities. Id. § 290(a). Defendant registered as a sex offender with the UCB police chief in 2008 and 2009, presumably in connection with his employment by LBL.

### B. EVENTS LEADING TO THE INSTANT CHARGES

#### 1. Defendant Accesses Child Pornography at LBL

On the morning of April 20, 2010, an offsite security contractor with the National Energy Research Scientific Computing Center ("NERSC") was monitoring LBL's servers and noticed an unusual amount of internet traffic to domain names ending in .biz and .info, preceded by entries such as "tinymodel," "young-angels," "party-models," "newstar-bambi," and "skygirls." This prompted the contractor to investigate further, at which point he was able to isolate the traffic to a particular IP (Internet Protocol) address. The contractor determined that the identified IP address was using the server to access BitTorrent files with names such as "Taboo-Incest-Father-And-Daughter-Have-Sex-But-Busted-By-Moms-Hidden-Camera-Pthc-Porn-2007-incest" and "Pthc-Russia10Yo-11Yo-Little-Brother-And-Sister-2BoyGirls-Fucking-Just-Posing-Or-Naked-Pthc-R." Id. at DB-19, DB-20. The IP address was traced to a MacBook Pro laptop computer which had been assigned to the Defendant.

Upon being notified of the suspicious internet activity by Defendant, LBL's Director of Security notified the UCB Police Department ("UCPD") to report that Defendant had

1 been visiting websites that potentially hosted child pornography.  LBL staff confiscated the
2 MacBook Pro laptop and turned it over to Detective Nicole Miller.  LBL also confiscated
3 eight computers at LBL's facility in Berkeley, and turned them over to UCPD on April 21,
4 2010.  After the hard drives of the seized computers were reviewed, UCPD Detective
5 Sabrina Reich applied for and obtained a warrant from the Alameda County Superior Court
6 to search Defendant's residence in Richmond, California.

### 2. Interviews of Defendant at His Home

On April 22, 2010, Detectives Reich and Miller visited Defendant at his home.  Defendant, accompanied by his wife, greeted the Detectives at his door and stated that he was expecting them.  Detective Reich began the meeting by noting that Defendant's employer had reported that he "may have looked at some inappropriate stuff" on his computer and that they wanted to hear what he had to say.  Defendant began by stating, "well, you know my background," and proceeded to recount his molestation conviction in 1990.  Defendant indicated that he took responsibility for his conduct, and that he has not molested anyone else since his conviction.  However, he said that "pornography is a different matter. … it's addictive and I'm addicted."  Defendant then indicated that he had "been through this process before" and did not wish to make any statements without legal counsel.

At the end of the interview, Detective Reich asked for Defendant's cooperation in gathering any computers or similar devices from his residence.  Defendant indicated he did not have any computers at his home.  Detective Reich then informed him that she had a search warrant and was looking for computers, electronic devices, and any printed pornographic materials, or videos.  Id.  At that point, Detectives Reich and Miller were joined by other law enforcement officers who performed the search and uncovered and

seized various items including a laptop computer, numerous hard drives, and pornographic DVDs.[1]

A second meeting with Defendant at his home took place about two weeks later on May 6, 2010. On that date, Department of Energy ("DOE") Special Agents Quenton Sallows and Nick Williamson met with Defendant and informed him that they were investigating the allegations that he possessed child pornography. Defendant admitted to downloading and viewing child pornography on his work computer. He told the Agents they would likely find child porn on the cache files on his computers. Defendant indicated "that he would download the images, place them in an untitled file, and then eventually delete the images from the computers." Defendant revealed that he has a long history of addiction to pornography and alcohol, and admitted to having been convicted in 1990 for molesting his stepdaughter. Though he has attempted to avoid viewing pornography, Defendant repeated several times that he has "demons which have been winning."

### 3. Child Pornography Found on Defendant's Computers

Defendant's work computers were forensically examined by Special Agent Ryan Fussell, who discovered alleged child pornography on the unallocated space on the computer hard drives (meaning that the files had been deleted). More than 3,000 images of child pornography were found on the laptop and almost 20,000 such images were found on Defendant's desktop work computer. In addition, log files indicating recent downloading of child pornography by Defendant were located.

//
//
//

---

[1] Pursuant to the Court's Order partially granting Defendant's motion to suppress, the items seized from Defendant's home on this visit have been suppressed. The computers seized from Defendant's work and Defendant's statements, however, have not been suppressed.

## C. PROCEDURAL HISTORY

On March 31, 2011, Defendant was indicted on one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Dkt. 1.[2] During the course of the proceedings, Defendant filed two motions to suppress. On December 16, 2011, the Court partially granted Defendant's first motion and suppressed evidence seized from Defendant's home. The Court declined to suppress evidence seized from Defendant's workplace or the statements he made during the two interviews at his home. Thereafter, Defendant renewed his motion to suppress the statements he made during the two meetings with the UCPD detectives and DOE agents. On March 27, 2012, the Court denied Defendant's renewed motion to suppress. Dkt. 44, 45.

Trial is scheduled to commence on July 8, 2013, and a pretrial conference is set for July 2, 2013. In anticipation of those proceedings, Defendant has now filed five motions in limine. Dkt. 88. Specifically, Defendant seeks an in limine order: (1) limiting the Government to presenting only five child pornography images (photos) at trial; (2) excluding Defendant's 1990 state court conviction for child molestation and his related UCB sex offender registrations; (3) excluding a computer file entitled "Moral Inventory" in which Defendant admitted to being a "pedophile"; (4) excluding any other act evidence under Federal Rule of Evidence 404(b) of which the Government has not yet provided notice; and (5) excluding network and computer file logs which purport to show Defendant's internet activity, which include files with sexually graphic names. The motions are fully briefed and are ripe for adjudication. Dkt. 89, 97.

---

[2] To convict Defendant of violating 18 U.S.C. § 2252(a)(4)(B), the Government must prove the following elements beyond a reasonable doubt: (1) Defendant knowingly possessed a matter that the Defendant knew contained a visual depiction of minors engaged in sexually explicit conduct; (2) Defendant knew the visual depiction contained in the matter showed minors engaged in sexually explicit conduct; (3) Defendant knew that production of such a visual depiction involved use of minors engaged in sexually explicit conduct; and (4) the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce. See 9th Cir. Model Jury Instr. 1.185; 18 U.S.C. § 2252(a)(4)(B).

## II. DISCUSSION

### A. MIL 1: LIMITATION ON NUMBER OF CHILD PORNOGRAPHY IMAGES

The Government has found more than 23,000 "images related to child pornography" on Defendant's workplace computers. Gov. Opp'n at 4, Dkt. 89. At trial, the Government intends to admit thirty-three of those images as evidence of Defendant's possession of child pornography. These particular photos are taken from five photosets which the Government has styled as "Shower," "Stocking," "Cannon," "Hammock," and "Beach." Gov. Exs. 3-7. Each photoset is based on a theme or backdrop.[3] The photos show the children in a costume or outfit, in different sets or scenes; as the series progresses, the subjects are shown in increasing degrees of nudity, to the point where their genitalia are prominently exposed. Gov. Opp'n at 4-5. Exhibit 3 (Shower) shows two girls in each photo. Exhibits 4 through 7 each show a different girl in each photoset.

Defendant now moves for an in limine order limiting the Government's presentation at trial to only five images—based on one image from each photoset. He contends that all of the images from each photoset are basically the same, and that presenting more than one image per photoset will be duplicative and unduly prejudicial within the meaning of Rule 403. Def.'s Mot. at 3. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997).

---

[3] For instance, the Shower photoset is a series of photos in which two young girls are photographed nude and semi-nude in a tiled shower stall. The other photosets show one young girl "modeling" in various other "sets." The Court has independently reviewed each of the images and notes that subjects are clearly very young girls; many of the photos are sexually suggestive and provide close-up views of the girls' genitalia.

As an initial matter, the images at issue are not extrinsic to the crime, but are "part of the actual pornography possessed." United States v. Dodds, 347 F.3d 893, 898 (11th Cir. 2003). Consequently, the images are probative in that "they show that the images actually were child pornography, they tend to show that [Defendant] knew the images were child pornography, [and] they infer intent on [Defendant]'s part to collect such pornography[.]" Id. at 899 (upholding admission of 66 pictures out of 3,400 available images). Defendant does not dispute the probative value of the images, but insists that proffered photos are duplicative and cumulative, and that one photograph from each photoset should suffice. However, Defendant ignores that there is significant evidentiary value in allowing the Government to present multiple images from the same photoset.

As explained in Old Chief:

> Evidence . . . has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.

519 U.S. at 187. Here, it is arguable that a single photo from each photoset may suffice to reveal the illegal nature of the image—but a single photo does not tell the full story regarding Defendant's conduct. Each photoset is comprised of an array of photos that depict very young girls in progressively more suggestive and sexually explicit poses and/or stages of undress, ultimately culminating in a close-up view of the subject's genitalia. Far from being duplicative, the images offered from each photoset are distinct, and, when viewed together as a sequence, convey a visual fantasy intended to whet viewer's sexual interest. The Government's ability to present multiple photos from each photoset—as opposed to one—is consistent with the Government's "need for evidentiary richness and narrative integrity in presenting a case[.]" Id. at 183.

Defendant fails to cite any decisional authority where the court has limited the Government's presentation of pornographic images to only a handful out of tens of thousands of potential images. Rather, he cites United States v. Storm, -- F. Supp. 2d --,

2012 WL 6743811 (D. Or. 2012) in which the district court observed that "[t]he Ninth Circuit and other courts have looked favorably on efforts by district courts to manage potentially prejudicial impact by limiting the number of images published to the jury . . . ." Id. at *6.  In Storm, the district court conducted an in camera review of the child pornography images which the prosecution sought to present at trial, and ultimately allowed the 38 of the proposed 97 images.  Id. at *9-*14.  Setting aside that the court actually allowed more images of pornography than is being requested in this case, Storm did not confront the situation presented herein, where groups of the proposed images are linked together as a photoset.  Thus, the fact that the court in Storm reduced the number of images to be presented to the jury is inapposite.

Finally, in his reply, Defendant argues that the presentation of thirty-three images is unnecessary because, at trial, he will not dispute that "the images are both child pornography and actual minors."  Def.'s Reply at 2.  Since Defendant did not raise this contention in his moving papers—which would have thus afforded the Government an opportunity to respond—it is not properly before the Court.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("issues cannot be raised for the first time in a reply brief.").  That aside, Defendant's belated offer is of little moment.  "[T]he prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, . . . a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."  Old Chief, 519 U.S. at 186-87.  In this case, "[t]he images of child pornography that the Government seeks to publish to the jury are an integral component of the prosecution's coherent narrative, a part of 'the natural sequence of what the defendant is charged with thinking and doing to commit the current offense.'"  Storm, 2012 WL 6743811, *2 (quoting in part Old Chief, 519 U.S. at 191).  Moreover, Defendant's belated claim that he will not dispute that the images constitute child pornography does not address the fact that they also show that Defendant "knew he was in possession of child pornography," a fact to which he has not stipulated.  United States v. Alfaro-Moncadam, 607 F.3d 720, 734 (11th Cir. 2010) (affirming admission of still images

taken from child pornography DVDs, notwithstanding defendant's stipulation that the DVDs contained child pornography).[4]

In sum, the Court is unpersuaded by Defendant's contention that Rule 403 dictates that the Government be limited to a total of five images, one from each photoset. Based on its in camera review of the images, the Court finds that the probative value of permitting the jury to view multiple images from the same photoset outweighs the potential for unfair prejudice to the defense. Nonetheless, the Court finds it unnecessary for the Government to publish thirty-three such images; rather, in balancing the probative value against the potential prejudicial effect of allowing multiple images, the Court will allow the Government to present at trial no more than three images from each photoset. The images selected by the Government should be consistent with the rationale set forth above. Accordingly, Defendant's motion in limine to limit the number of child pornography images the Government may present at trial is GRANTED IN PART and DENIED IN PART.

### B.   MIL 2: CRIMINAL RECORD AND SEX OFFENDER REGISTRATION

#### 1.   Overview

Defendant next moves to exclude his 1990 conviction for committing a lewd act on a child and related sex offender registrations with the UCPD in 2008 and 2009.[5] The documents which the Government intends to introduce relating this conviction consist of the Solano County Superior Court's commitment order and a minute order, and a copy of Defendant's sex offender registrations on file with the UCPD. Gov. Ex. 26 (certified conviction records); Ex. 27 (2008 sex offender registration); Ex. 28 (2009 sex offender registration). Defendant contends that this evidence should be excluded under Rules 404

---

[4] In fact, Defendant has not agreed to stipulate to anything. He merely states that he will not "dispute" that the images are pornographic and depict children. Def.'s Reply at 2.

[5] The parties intermittently refer to the conviction as taking place in 1989; however, the exhibits indicate a conviction date of July 11, 1990. Gov. Ex. 26.

1  and 403, claiming that it is improper propensity evidence and that the prior conviction is
2  too old to be admitted. Def.'s Mot. at 4-6; Reply at 4-8.
3       Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not
4  admissible to prove a person's character in order to show that on a particular occasion the
5  person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is
6  nonetheless admissible for other purposes, "such as proof of motive, opportunity, intent,
7  preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Id.
8  404(b)(2). To admit evidence of prior acts, it must: (1) tend to prove a material point in
9  issue; (2) not be too remote in time; (3) be proven with evidence sufficient to show the act
10 was committed and; (4) if admitted to prove intent, must be similar to the offense charged.
11 United States v. Beckman, 298 F.3d 788, 794 (9th Cir. 2002). If evidence satisfies Rule
12 404(b), "the court must then decide whether the probative value is substantially outweighed
13 by the prejudicial impact under Rule 403." United States v. Romero, 282 F.3d 683, 688
14 (9th Cir. 2002).
15      "Rule 404 is simply a specific qualification of the general rule of the admissibility of
16 all relevant evidence." United States v. Curtin, 489 F.3d 935, 943 (9th Cir. 2007) (en
17 banc). In Curtin, the Ninth Circuit explained as follows:

> Rule 404(b) is a rule of inclusion—not exclusion—which
> references at least three categories of other "acts" encompassing
> the inner workings of the mind: motive, intent, and knowledge.
> Once it has been established that the evidence offered serves
> one of these purposes, the relevant Advisory Committee Notes
> make it clear that the "only" conditions justifying the exclusion
> of the evidence are those described in Rule 403: unfair
> prejudice, confusion of the issues, misleading the jury, undue
> delay, waste of time, or needless presentation of cumulative
> evidence[.]

United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007) (en banc); accord United States v. Bailey, 696 F.3d 794, 806 (9th Cir. 2012) ("Indeed, unless the evidence of other crimes tends only to prove propensity, it is admissible.") (internal quotations and alterations omitted).

- 10 -

## 2. Prior Conviction

The Government contends that the molestation conviction is probative of Defendant's sexual interest in children, which, in turn, bears upon his "motive" to possess child pornography and whether he "knowingly and intentionally possessed the child pornography found on his computer." Gov. Opp'n at 8, 9. This theory of admissibility is supported by federal case law, which has consistently held that a defendant's prior molestation conviction is relevant and admissible in a child pornography prosecution because it tends to show that the defendant intentionally downloaded child pornography, that he knew the images were child pornography, and that he could not have mistaken the subject images as anything other than child pornography. See United States v. Brown, 893 F.2d 1066, 1070-71 (9th Cir. 1990) (holding that a child pornography defendant's prior convictions for molesting young girls were admissible to show that he had "actual knowledge that the girl in the photos was a minor."); United States v. Sebolt, 460 F.3d 910, 917 (7th Cir. 2006) (upholding Rule 404(b) admission of evidence in possession of child pornography prosecution that defendant previously molested his relative, noting that "[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children"); see also People v. Holford, 203 Cal.App.4th 155, 183 (2012) ("Here, evidence showing defendant had a sexual interest in underage girls was relevant to the issue of whether he knowingly possessed the child pornography").

Defendant does not directly address the Government's theory of admissibility under Rule 404(b). Def.'s Reply at 4. Instead, he asserts that the prior conviction is improper propensity evidence under Rule 404(a). Rule 404(a) provides that: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion

the person acted in accordance with the character or trait." Fed. R. Evid. 404(a).[6] The "classic propensity inference" that Rule 404(a) prohibits is using a prior conviction or act to show that the defendant committed the same crime or act again. United States v. Vavages, 151 F.3d 1193, 1194 (9th Cir. 1998). That situation is not present here. Defendant is not charged with being a pedophile; rather, he is charged with knowingly possessing child pornography. But even if the prior molestation conviction could be used impermissibly—as Defendant suggests—to show that he has a propensity to possess child pornography, he does not dispute that such evidence is probative of issues <u>other than</u> propensity; i.e., knowledge and motive. Since the conviction is offered for purposes other than propensity, it is admissible. See Bailey, 696 F.3d at 806 (prior act evidence inadmissible if its "only" purpose is to prove propensity).

Equally unavailing is Defendant's ancillary assertion that the age of the conviction "argues strongly for excluding it." Def.'s Reply at 5. The Ninth Circuit has not adopted "an inflexible rule regarding remoteness in the context of Rule 404(b)," United States v. Hadley, 918 F.2d 848, 851 (9th Cir. 1990), and "has not identified a particular number of years after which past conduct becomes too remote," United States v. Johnson, 132 F.3d 1279, 1284 (9th Cir. 1997). "Depending upon the theory of admissibility and the similarity of the acts, for example, some remote acts may be extremely probative and relevant." United States v. Spillone, 879 F.2d 514, 519 (9th Cir. 1989) (seventeen year-old conviction was not too remote in light of its similarity to the offense at issue); accord United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997) (acts committed thirteen years before the offense were not too remote).

Here, Defendant's prior conviction, though suffered in 1990, nonetheless remains germane to his longstanding challenges with his addiction to pornography—including his continuing sexual interest in children which, in turn, ultimately led to his possession of

---

[6] Defendant did not argue in his moving papers that the prior conviction constitutes inadmissible propensity evidence. Rather, this is yet another new argument raised for the first time in his reply.

child pornography.  See Sebolt, 460 F.3d at 917.[7]  When interviewed by the DOE agents, Defendant readily disclosed the details of the prior molestation, his problems with addiction to alcohol and pornography, his attraction to 7 to 12 year-old girls and his ongoing efforts to stay away from children.  He also commented that "he has demons which have been winning."  Dkt. 21-5 at 6.  Although the prior conviction was for child molestation, as opposed to possession of child pornography, there is a sufficient relationship between the two crimes to warrant the admission of the prior conviction.  C.f. United States v. Brand, 467 F.3d 179, 198 (2d Cir. 2006) ("child pornography shares a strong nexus with pedophilia").  In view of that relationship, coupled with Defendant's personal history of addiction and fixation on young girls, the Court finds that, despite its age, his molestation conviction is not too remote to preclude its admission.

For all the foregoing reasons, the Court DENIES Defendant's motion in limine to exclude his prior conviction.  However,to minimize the potential for undue prejudice, see Fed. R. Evid. 403, the Court precludes the Government from offering the specific details of the prior conviction; to wit, that Defendant molested his seven year-old stepdaughter.[8]

---

[7] It bears noting that the 1990 conviction continues to impose burdens on Defendant in that under the Sex Offender Registration Act, he is subject to lifetime registration as a sex offender.  Cal. Pen. Code § 290.

[8] Defendant alternatively requests that in the event his motion in limine is not granted, the Court defer ruling on the admissibility of the prior conviction and preclude the Government from mentioning it until after the Government has presented all of its evidence.  Def.'s Mot. at 5.  He claims that such a procedure will allow the Court to assess the probative value and prejudicial impact of the prior conviction and sex offender registration relative to the other evidence presented.  Id.  However, the Court has already been provided with an ample record upon which to balance the competing Rule 403 concerns as they pertain to the challenged evidence.  Indeed, the Court granted Defendant's request to file an oversized reply brief based on his purported desire to fully address all of the issues raised by the Government.  Moreover, Defendant ignores that motions in limine are designed to streamline trials by settling evidentiary disputes in advance and by minimizing side-bar conferences and other disruptions at trial.  Similarly, resolving disputed evidentiary issues through motions in limine facilitates more extensive argument and briefing than would be likely during trial.  See Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, *1 (C.D. May 19, 2010) (citing cases).  Deferring a ruling on the admissibility of the prior conviction and sex offender registration—after full briefing on the matter—undermines those purposes.

### 3. Sex Offender Registrations

The Government contends that the probative value of the sex offender registrations is based on the Defendant's alleged disclosure of such information "to police when he was interviewed a few days after he was caught downloading pornography."  Gov. Opp'n at 8. Presumably, the Government is referring to the home interview of Defendant conducted on April 22, 2010 by UCPD Detectives Reich and Miller.  The Court has reviewed the recording of that interview and notes that while Defendant mentioned his prior conviction, he made no mention of the sex offender registrations.  Since the Government has not shown that the sex offender registrations have any other probative value, the Court GRANTS Defendant's motion in limine to exclude evidence of or reference to the sex offender registrations at trial.

### C. MIL 3: "MORAL INVENTORY"

Defendant next moves to exclude the contents of a file found on the hard drive of Defendant's workplace desktop computer entitled "Moral Inventory."  Gov. Ex. 20.  The file was created in 1990.  The file consists of a document which appears be to a self-assessment in six areas:  (1) "Arrogance"; (2) "Dishonesty"; (3) "Sexuality"; (4) "Prompness" [sic]; (5) "Fear"; and (6) "Self Pity."  With regard to sexuality, Defendant states that "THIS IS GOING TO BE A BIG ONE! . . . .  I am a pedophile, and I want to understand why!"  Id.[9]

The Government contends that Defendant's admission that he is a pedophile is probative of his motive to possess child pornography.  Gov. Opp'n at 9.  Perhaps so, but this evidence is cumulative of evidence pertaining to Defendant's 1990 conviction for child molestation.  Based on that evidence, the jury already will be informed that Defendant was, at that time, a pedophile.  As such, it is unnecessary for the jury to be again so informed.

---

[9] The Government asserts that the file was "accessed" in March 2010, but provides no evidence to support this claim.  In contrast, Defendant has presented evidence that over 700,000 files were "last accessed" on Defendant's computer, which is consistent with automated activity, such as a virus scan.  Loehrs Reply Decl. ¶ 6, Dkt. 97.

Thus, pursuant to Rule 403, the Court GRANTS Defendant's motion in limine to exclude evidence of or reference to the Moral Inventory file at trial.

### D. MIL 4: UNDISCLOSED OTHER ACT EVIDENCE

Defendant moves to exclude any "other act" evidence for which it has not yet provided notice to the defense. Mot. at 7. Rule 404(b) "requires that 'the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.'" United States v. Vega, 188 F.3d 1150, 1152-53 (9th Cir. 1999) (quoting in part Fed. R. Evid. 404(b)(2)). The Government does not identify any particular previously undisclosed Rule 404(b) that it intends to offer at trial. Thus, Defendant's motion in limine is GRANTED without prejudice to the Government's ability to seek leave to admit previously undisclosed Rule 404(b) evidence.

### E. MIL 5: EXCLUSION OF FILE LOGS AND FILE NAMES

In his final motion in limine, Defendant seeks to preclude the Government from admitting into evidence the network log files and the log files on Defendant's computer that indicate he was downloading child pornography. These files were discovered by the NERSC security contractor who was monitoring LBL's computer system. Defendant contends that the names of some of the computer files referenced in those logs are inflammatory within the meaning of Rule 403 and thus should not be admitted unless either: (1) the Government proves that Defendant actually possessed those files; or (2) the content of the file associated with the file name contains illegal content.

The challenged file logs are set forth in Government Exhibits 8, 21 and 22. Exhibit 8 is an email from the NERSC security contractor to Detective Miller which summarized information he obtained from his review of LBL network server logs.[10] A network log tracks internet traffic originating from a particular computer which connects to the internet

---

[10] Defendant contends that Exhibit 8 is inadmissible hearsay. Def.'s Mot. at 8. Since the Government does not challenge or respond to this contention, the hearsay objection is SUSTAINED. This ruling is without prejudice to the Government's presentation of Exhibit 8 at trial for a non-hearsay purpose.

through a network server.  The log captures a variety of information, such as the user's downloading activity and search queries.  In this case, the traffic was isolated to a specific IP address, which corresponded to the computer assigned to Defendant.  The network logs show that the IP address corresponding to Defendant's computer submitted inquiries for BitTorrent files with sexually-explicit names, such as "Taboo-Incest-Father-And-Daughter-Have-Sex-But-Busted-By-Moms-Hidden-Camera."  Exhibits 21 and 22 are log files from Defendant's computer.  Exhibit 21 is a log from a file sharing program called Timbuktu.  The Government alleges that Defendant used the login name "dbuz" to download child pornography using that program.  Exhibit 22 is a log of BitTorrent files with names such as "Fucking_aYoung_Ukranian_Lolita_in_motel" and Young_Ukranian_girl_swallows_cum-From_older_guy."

Defendant does not dispute that the file logs are relevant and admissible; nor does he dispute that the logs constitute an accurate summary of what the NERSC security contractor observed.  Rather, Defendant asserts that the graphic names of some of the files referenced in the file logs are unduly prejudicial because there is no evidence that the files appearing on the logs were actually found on Defendant's computer or that those files contained illegal pornography.  Mot. at 8-9.  This argument misses the point.  The significance of the file logs, and the sexually graphic file names in particular, is that they were what, in the first instance, alerted LBL's security contractor that Defendant may be visiting child pornography sites and/or downloading child pornography and ultimately prompted him to report his finding to LBL's Director of Security.  As discussed above, the Government is permitted to present this type of evidence at trial in order to provide the jury with a logical and complete picture of the events leading to the instant charges.  See United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-1013 (9th Cir. 1995).

In his reply, Defendant tacitly concedes the probative value of the file names and makes a new argument that "the contractor can testify that he noted activity that was suspicious and led him to believe that a user was seeking out child erotica or child pornography without detailing the names of the files."  Def.'s Reply at 12.  This contention

lacks merit. Defendant admitted to the DOE agents that he used his work computers to search for child pornography and various websites. As noted, the sexually explicit nature of some of the files on the file logs is what triggered the NERSC contractor to alert authorities regarding Defendant's potentially illegal activities. The names are thus relevant and highly probative because they provides context to the actions leading to the discovery of child pornography on Defendant's computer and it demonstrates Defendant's knowledge of the sexually explicit nature of the materials he was looking for on the internet. The fact that some of the file names are graphic in nature does not require their exclusion. See United States v. Ganoe, 538 F.3d 1117, 1124 (9th Cir. 2008) ("The trial judge's job is to avoid unfair prejudice. The court is not required to scrub the trial clean of all evidence that may have an emotional impact.") (internal quotations omitted). The Court therefore DENIES Defendant's motion in limine to exclude the file logs.

### III. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendant's Motions in Limine No. 1 is GRANTED IN PART and DENIED IN PART. The Government shall be limited to a total of fifteen (15) images of child pornography, based on three (3) images per photoset.

2. Defendant's Motions in Limine No. 2 is DENIED as to the prior conviction and GRANTED as to the sex offender registrations.

3. Defendant's Motions in Limine No. 3 is GRANTED.

4. Defendant's Motions in Limine No. 4 is GRANTED, without prejudice to the Government's ability to seek leave to admit previously undisclosed Rule 404(b) evidence.

5. Defendant's Motions in Limine No. 5 is DENIED, except as noted.

IT IS SO ORDERED.

Dated: June 28, 2013

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge